UNITED STATES DISTRICT COURT        **O**
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| SPECIALTIES OF MEXICO INC. *et al* | § | |
| | § | |
| Plaintiffs | § | |
| VS. | § | CIVIL ACTION NO. L-09-88 |
| | § | |
| MASTERFOODS USA | § | |

## ORDER

On January 26, 2010, Defendant Masterfoods USA ("Defendant") filed the instant Motion to Dismiss Plaintiff Specialties of Mexico, Inc. ("SoM") and Plaintiff Distribuidora de Basicos Regiomontanos, S.A. de C.V.'s ("Dibaresa") (collectively "Plaintiffs") First Amended Complaint, in its entirety, under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." [Dkt. Nos. 35, 36]. After careful consideration of Defendant's Motion, the contents of the complaint, and the applicable law, the Court GRANTS, in part, and DENIES, in part, Defendant's Motion.

## I.    BACKGROUND

The following facts are taken from Plaintiffs' First Amended Complaint, [Dkt. No. 32]. Plaintiff SoM is a Texas corporation, based out of Laredo, Texas. [*Id.* at 1]. Beginning in 2004, SoM bought chocolate candy from Defendant Masterfoods USA in the United States. [*Id.*]. Masterfoods USA is a Delaware corporation, doing business in Texas. [*Id.* at 1]. After purchasing the candy in the United States, SoM would transfer the candy to Co-plaintiff Dibaresa, a Mexican Corporation, who would then sell it to retail customers in Mexico. [*Id.*]. Both of the Plaintiff corporations, SoM and Dibaresa, are run by the same individual, Gerardo Cantu. [*Id.* at 3].

As SoM's Mexican counterpart is Dibaresa, Defendant Masterfoods USA's Mexican

counterpart is Masterfoods Mexico.  Plaintiffs allege that Masterfoods USA and Masterfoods Mexico are both "controlled and directed" by Mars, Inc., with Masterfoods USA handling candy sales in the United States and Masterfoods Mexico[1] handling candy sales in Mexico.  [*Id.* at 12].  Importantly, neither Masterfoods Mexico, nor Mars, Inc., has been named as a defendant in this case; Masterfoods USA is the sole named defendant.

SoM would purchase the candy in Texas from Masterfoods USA through a third party, Sell-Thru Services, Inc. ("Sell-Thru").[2]  [*Id.*].  SoM would place orders with Sell-Thru, and Defendant would fill them.  [*Id.*].  "Dibaresa did not buy product in the United States or deal directly with Defendant [Masterfoods USA]."  [*Id.* at 18].

When the relationship between SoM and Masterfoods USA began, Masterfoods USA was "aware that the products being ordered were for sale in Mexico."  [*Id.* at 3].  With that knowledge, Plaintiffs allege that Masterfoods USA agreed to "sell product to [SoM][3] that [Masterfoods Mexico] did not have in its portfolio," in order to "maximize the sales of Mars, Inc."  [*Id.* at 10, 5].

In December 2005, Masterfoods Mexico, aware of Dibaresa's sales in Mexico but unaware of where the imported candy was coming from, contacted Cantu to discuss the possibility of selling candy to Dibaresa in Mexico.  [*Id.* at 5].  In April 2006, Masterfoods Mexico began contacting Dibaresa customers in Mexico, and offering to provide them with the same products as Dibaresa, at a lower price.  [*Id.* at 6].  Dibaresa agreed to buy certain products

---

[1] Plaintiffs refer to Masterfoods Mexico by an array of names in the Complaint:  Masterfoods Mexico, Masterfoods MX, Masterfoods, Mars Mexico, Effem, Effem Mexico, and simply Mars.  [Dkt. No. 32].  Plaintiffs compound the difficulties in interpreting their pleadings by also seemingly using "Specialties of Mexico" and "Dibaresa" interchangeably, as well as simply "Masterfoods" to refer to either Masterfoods USA or Masterfoods Mexico.  Despite these problems, for the purposes of ruling on Defendant's instant motion, the Court will attempt to decipher the Complaint.

[2] The Court denied Plaintiffs' motion to add Sell-Thru as a defendant, finding that the primary purpose was to defeat diversity jurisdiction.  [Dkt. No. 27].

[3] The complaint states "Dibaresa" here, but this would contradict Plaintiffs' statement that Dibaresa never dealt directly with Masterfoods USA.  *See* [Dkt. No. 32 at 18].

from Masterfoods Mexico, but continue to handle the rest of its products through the United States.  [*Id.* at 7].  "Masterfoods [Mexico][4] pressured Dibaresa concerning its source of supply and prices."  [*Id.*].

"In April 2007, Dibaresa became aware that Masterfoods [Mexico][5] was acting very differently from what it was representing to Dibaresa."  [*Id.*].  Specifically, Masterfoods Mexico was instructing Dibaresa customers to stop buying from Dibaresa because "Dibaresa was doing a lot of damage to the market," and that if they did not stop buying from Dibaresa, Masterfoods Mexico would not sell them any other products.  [*Id.*].  Dibaresa then wrote to "Daniel Gilbert[6] asking for an explanation because the information and plans that Dibaresa had disclosed were being used by Masterfoods [Mexico][7] against Dibarsea."  [*Id.*].

During this time, SoM continued to buy products from Masterfoods USA in the United States, and the two continued their business relationship.  [*Id.*].  In May 2007, Ken Fridey, an employee of Masterfoods USA, wrote Cantu saying "I spoke with [Masterfoods] Mexico yesterday and they advised me that they are still working on a proposal for you.  For now, it is business as usual until they finalize their proposal."  [*Id.*].

Through July 2007, SoM[8] continued to "[issue] purchase orders and [buy] Mars product [from Masterfoods USA] through Sell-Thru."  [*Id.*].  "SoM and Dibaresa continue[d] to promote Defendant's products in Mexico, and introduce [Ken Fridey] to customers such as 7-Eleven Mexico at product expositions in Mexico in September 2007."  [*Id.* at 8].  In October 2007, Sell-

---

[4] While not specific, Plaintiffs are seemingly referring to Masterfoods Mexico, as it would be illogical for Masterfoods USA to pressure Dibaresa for their own identity and prices.
[5] Again, Plaintiffs are seemingly referring to Masterfoods Mexico.
[6] It is not clear from the complaint who Daniel Gilbert is, whether he is an employee of Masterfoods USA or Masterfoods Mexico.
[7] Again, presumptively Masterfoods Mexico.
[8] In the complaint, it states that "Cantu continued to do business with Masterfoods," but in light of the fact that Dibaresa never dealt directly with Masterfoods USA, the Court reasons that Cantu was issuing these purchase orders on behalf of SoM.

Thru informed Cantu that Ken Fridey had instructed Sell-Thru to stop supplying Masterfoods USA's product to SoM.  [*Id.*].  Ken Fridey informed Cantu that any future products should be purchased from Masterfoods Mexico.  [*Id.*].  Ultimately, in January 2008, Sell-Thru refused to sell Cantu any of Masterfoods USA's products, at the request of Masterfoods USA.  [*Id.*].

Cantu then tried to purchase candy products through Masterfoods Mexico, but encountered problems, such as products with "short expiration dates," "mislabeling," and sometimes no response at all.  [*Id.* at 10].  In the Spring of 2008, "Cantu learned that while Masterfoods [Mexico] was representing that it would supply product, Masterfoods [Mexico] was contacting Dibaresa's clients such as OXXO and 7-Eleven, and telling them that Masterfoods [Mexico] was going to be the ones (sic) supplying the products and at a price below Dibaresa's price."  [*Id.* at 11].  Cantu confronted Masterfoods Mexico about this action in an email, and Masterfoods Mexico did not respond.  [*Id.*].  In December 2008, Masterfoods Mexico disclosed that they "now wanted to decide what entered into Mexico and what would not enter according to its brand strategy."  [*Id.* at 12].  Cantu tried to continue the relationship in early 2009, but Masterfoods Mexico "basically shut out SoM and Dibaresa through its operations in Mexico, [Masterfoods USA's] refusal to sell in the USA and Sell-Thru's refusal to sell without Defendant's approval."  [*Id.*].

On July 3, 2009, SoM and Dibaresa filed this action against Masterfoods USA in the 111th Judicial District Court, Webb County, Texas.  [Dkt. No. 1].  On August 14, 2009, Masterfoods USA removed the case to this Court, on the basis of diversity jurisdiction, 28 U.S.C. § 1332, as Plaintiff SoM is a Texas corporation, Plaintiff Dibaresa is a Mexican corporation, Defendant Masterfoods USA is a Delaware Corporation, and the amount in controversy exceeds $75,000.  [*Id.*].  On January 5, 2010, Plaintiffs filed their First Amended Complaint, alleging:

(1) breach of contract; (2) breach of duty of good faith and fair dealing; (3) tortuous interference with contract and business relations; (4) common law fraud; (5) negligent misrepresentation; (6) three claims under Mexican Law; and (7) civil conspiracy.  [Dkt. No. 32].  In the instant motion, Masterfoods USA asserts that each claim should be dismissed for failure to state a claim under Rule 12(b)(6), and each will be discussed in turn.

## II.   DISCUSSION

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must state "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P.  8(a)(2). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  For a complaint to withstand a Rule 12(b)(6) motion to dismiss, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*  A complaint meets this requirement when it contains facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  When evaluating a complaint against a 12(b)(6) motion, the Supreme Court in *Iqbal* further clarified:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."

*Id.* at 1949-50 (citing FED. R. CIV. P. 8(a)(2)).    After recognizing the applicable standards set out in *Iqbal* and *Twombly*, the Court now turns to the merits of Defendant's motion.

**A.  Choice of Law**

In contract, Plaintiffs claim breach of contract and breach of the duty of good faith under Texas law.  [Dkt. No. 32 at 12-14].  Neither Plaintiffs nor Defendant contend that any law other than Texas should govern theses claims.  In addition to Texas contract claims, Plaintiffs plead tort claims under both Texas and Mexican law.  [Dkt. No. 32 at 14-21].  Because a court must draw its own "legal conclusions" in addressing a Rule 12(b)(6) motion, the initial conclusion to be reached is whether Texas or Mexican law governs Plaintiffs' claims.

A federal district court exercising diversity jurisdiction must apply the choice of law rules of the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941).  This Court, sitting in Texas, applies Texas choice of law principles.   In making a choice-of-law determination, Texas courts apply the "most significant relationship test," as it is set forth in the Restatement (Second) of Conflict of Laws (1971).  *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004) (citing *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 420-21 (Tex. 1984)).

The Restatement applies a fact-based analysis, with § 6(2) laying out a list of factors relevant to a choice of law:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 6(2) (1971).   Also applicable to the instant case, and helpful when applying the § 6 factors, are the later sections of the Restatement which lay out specific contacts to be taking into consideration for different types of claims.  Section 188

governs contract disputes, and § 145 governs tort disputes. As Plaintiffs' amended complaint consists of both contract and tort claims, the Court will consider factors under both sections:

> § 188. [Contracts] Law Governing In Absence of Effective Choice By The Parties
> . . .
> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
> . . .
> § 145. [Torts] The General Principle
> . . .
> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS, §§ 188, 145 (1971).

Plaintiffs' contract claims are based on the relationship between Plaintiff SoM and Defendant Masterfoods USA, and their dealings in Texas. Defendant Masterfoods USA is a Delaware corporation, doing business in Texas. [Dkt. No. 32 at 1-2]. Plaintiff SoM is a Texas corporation. Under § 188, Plaintiffs' Amended Complaint does not specify the place of contracting or the place of the negotiation of the contract, but as the parties' relationship is centered in Texas, both are most likely Texas. The place of performance was "the United States," again presumably Texas, as Plaintiffs would later transfer the products into Mexico. [*Id.* at 3]. The subject matter of the contract is not as applicable in this case as in others, as the subject matter here is an obligation to sell, instead of a tangible item. The alleged breach, by refusing to sell, also occurred in Texas. The alleged damages arise from "lost sales and profits," which also presumably arose in Texas, as it is not alleged that Plaintiff SoM ever sold products directly in Mexico. [*Id.* at 13].

Plaintiffs' tort claims are also based on dealings between Plaintiff SoM and Defendant Masterfoods USA, but in a slightly different manner.   Plaintiffs allege that Defendant Masterfoods USA communicated misrepresentations to Plaintiff SoM about the intentions and actions of (non-party) Masterfoods Mexico.   [*Id.* at 7].   The damages arising from the various torts alleged center around the loss of business and customers in Mexico by Plaintiff Dibaresa, due to (non-party) Masterfoods Mexico's actions.   The interactions between Plaintiff Dibaresa and Masterfoods Mexico, both Mexican corporations, occurred in Mexico and thus would argue for the application of Mexican law.   However, as a non-party, Masterfoods Mexico's nationality is irrelevant in a suit against only Masterfoods USA.   Under § 145, the alleged misrepresentations by Defendant were made and received in Texas.   Reliance allegedly occurred in both Texas and Mexico, with Plaintiff SoM relying on the representations in Texas and Plaintiff Dibaresa relying on the representations in Mexico.

Under the general factors of § 6, "the protection of justified expectations" would weigh in favor of the application of Texas law.   SoM's relationship with Masterfoods USA was centered in Texas, so both would be justified in expecting Texas law to govern this relationship.   Also, "ease in the determination and application of the law to be applied" would argue for Texas over Mexican law, as this Court sits in Texas.   While Mexico certainly has an interest in protecting the rights of Dibaresa as a Mexican Corporation, Texas has the same interests in protecting the rights of SoM as a Texas corporation and Masterfoods USA as a corporation licensed to do business, and doing business, in Texas.   Texas also has an interest in resolving disputes arising within its borders.   The fact that any claim Plaintiff Dibaresa may have against non-party Masterfoods Mexico concerning dealings in Mexico can be adjudicated under Mexican law in a Mexican court, also argues for the corollary, the application of Texas law in a United States court

to dealings between SoM and Masterfoods USA. It must also be noted that so far as an application of Texas law is adverse to Plaintiffs interests, it was Plaintiffs themselves who chose a Texas forum in which to bring suit.

Considering all of these factors, the Court finds that Texas law should govern all of Plaintiffs' claims against Defendant Masterfoods USA under the "most significant relationship" test. This determination "necessarily precludes the application of [Mexican] law." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 680 (5th Cir. 2003). Thus, Plaintiffs' claims under Mexican law are DISMISSED, and Texas law will govern the remainder of Plaintiffs' claims.

### B. Breach of Contract

To prevail on a claim for breach of contract in Texas, a plaintiff must show: "(1) existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of contract by the defendant, and (4) damages caused by the breach." *Royce Bane Invs., Inc. v. McGinn*, 2008 WL 4335115, *2 (Tex. App.-Tyler 2008) (citing *Roof Sys., Inc. v. Johns Manville Corp.,* 130 S.W.3d 430, 442 (Tex. App.-Houston [14th Dist.] 2004, no pet.)). To establish the first element, existence of a valid contract, the plaintiff must show "(1) an offer, (2) acceptance, (3) meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Id.* (citing *Cessna Aircraft Co. v. Aircraft Network, L.L.C.,* 213 S.W.3d 455, 465 (Tex. App.-Dallas 2006, pet. denied)).

Plaintiffs assert that an overarching agreement existed with Defendant, beyond individual purchase orders, which Defendant breached by ending the business relationship and refusing to fill Plaintiffs' further requests for product. However, Plaintiffs' depiction of the agreement in the Complaint does not go beyond vague assertions. Plaintiffs' *entire* discussion of the agreement

and the factual assertions in support of the same are as follows:

> 14.    In January 2006, [Defendant] presented Cantu with a contract containing the terms of the relationship between [Defendant] and [Plaintiffs].  The contract confirmed the off-invoice allowance and requirements.  [SoM] was required to exercise its best efforts to participate in [Defendant's] launches of product and pass through the off-invoice allowance to retailers.
> . . .
> 40.    [Defendant] agreed that it would sell product to Dibaresa that [Masterfoods Mexico] did not have in its portfolio. . . .
> 41.    [Ken] Fridey confirmed to Cantu that [Defendant] would supply [Plaintiffs] going forward.  Fidey (sic) wrote on March 24, 2008:
>> Gerardo, it is encouraging that [Masterfoods Mexico] is working with you to create a long term solution for your business needs.  I will confirm with [Masterfoods Mexico] the business agreement on how [Defendant] will supply you going forward. . . .
> . . .
> 44.    . . . Fridey received purchase order (sic) from [SoM] and indicated that in accordance with the agreement with [Masterfoods Mexico], he could not supply [SoM].  This was in contradiction to the representation that [Defendant] would supply the product if [Masterfoods Mexico] would not.
> . . .
> 53.    [Defendant] breached the agreement with Plaintiff [SoM] by refusing to sell product it had agreed to sell.  Fridey specifically agreed that [Defendant] would sell Products to [SoM] that Masterfoods Mexico would not sell.  As a result of the breach, Plaintiff [SoM] suffered damages.  [Defendant] refused to sell products after Masterfoods Mexico refused to sell products to Dibaresa.  Such breach of contract by Defendant has proximately caused actual and special damages to Plaintiff, including lost sales and profits, out of pocket expenses to cover the customer's (sic) needs, lost investment opportunities and damage to Plaintiff's credit, business reputation and goodwill.

[Dkt No. 32 at 5-13].   Also, in response to the instant motion, Plaintiffs admit that this

overarching agreement to continue to provide products was never reduced to writing.  [Dkt. No.

40 at 5].  Paragraph 14 of the complaint must be read in the context of this admission, leading to

the conclusion that the "off-invoice allowances and requirements" mentioned in the January

2006 writing did not include an agreement by Defendant to sell products to Plaintiffs in the

future.  Plaintiffs go on, in paragraph 40, to nakedly assert that "[Defendant] agreed that it would

sell product to Dibaresa that [Masterfoods Mexico] did not have in its portfolio," but do not

allege a specific offer, acceptance, consideration, or material terms such as the duration of the contract, a quantity to be sold, or a price to be paid.  Paragraph 41, even in the light most favorable to Plaintiffs, is neither an offer nor an acceptance.  Paragraph 44 alleges facts to show that at some point (no date is indicated) Defendant received a purchase order from Plaintiffs which it refused to fill.  But, without previously pleading the specifics of Defendant's obligations under the agreement, Plaintiffs are unable to demonstrate how this refusal to sell was actually a breach of contract.  Again, in paragraph 55, Plaintiffs simply assert that there was an agreement to sell that was breached.

In sum, Plaintiffs continually refer to "the agreement," but never give any specifics of the agreement itself:  offer, acceptance, consent to its terms, the terms themselves (such as duration), or consideration.  Plaintiffs have pleaded sufficient facts to establish a business relationship between SoM and Masterfoods USA, that of buyer and seller over time.  But Plaintiffs have failed to plead sufficient facts to establish the plausibility of an overarching, binding "contract" to sell between the two that would be breached when this relationship came to an end.  While Rule 8 does not require a plaintiff to plead every detail of a contract in order to proceed on a claim for breach, it does require more than what Plaintiffs have provided in the Complaint. Plaintiffs have pleaded no facts that would suffice to move their claim for breach of contract from "possible" to "plausible," as required by *Twombly*, and therefore must be DISMISSED.

Additionally, given the admission that the contract was never reduced to writing, Plaintiffs claim for breach of contract may also be barred by the statute of frauds, under the Texas Business and Commerce Code § 2.201:

> (a) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought.

TEX. BUS. & COM. CODE § 2.201 (2009).  Though Plaintiffs have not characterized the contract as a "requirements" contract, such contracts are also required to be in writing by § 2.201.  *Royce Bane Invs., Inc. v. McGinn*, 2008 WL 4335115, n.2 (Tex. App.-Tyler 2008).  Also, if the duration of the contract was to be longer than one year, again, a writing would be required for enforcement.  TEX. BUS. & COM. CODE § 26.01(b)(6) (2009).  However, the factual insufficiencies in the Complaint which warrant dismissal under *Twombly* also prevent the Court from a complete analysis under the applicable statute of frauds.

### C.  Breach of Duty of Good Faith

Plaintiffs also allege that the "agreement by Masterfoods [USA] to sell to [SoM]" gave rise to a duty of good faith under the Texas Business and Commerce Code § 1.304, and that Masterfoods USA breached that duty.  [Dkt. No. 32 at 13].  The statute provides that "[e]very contract or duty within this title imposes an obligation of good faith in its performance and enforcement."  TEX. BUS. & COM. CODE § 1.304 (2009).  However, as the comments to the Code make clear, and Texas courts have consistently held, "[t]his section does not support an independent cause of action for failure to perform or enforce in good faith."  *Id.*, cmt. 1; *N. Nat. Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 606-07 (Tex. 1998).  Without an underlying contract to which the duty of good faith can attach, this claim cannot stand on its own.  Thus, as the claim for breach of the underlying contract has been dismissed above, this claim for breach of the accompanying duty of good faith cannot exist independently and must also be DISMISSED.

### D.  Common Law Fraud/Negligent Misrepresentation

Plaintiffs also assert common law fraud and negligent misrepresentation against Masterfoods USA.  [Dkt. No. 32 at 15-17].  Higher than the pleading standard of Rule 8 discussed in *Twombly/Iqbal*, Rule 9(b) requires that a fraud claimant "state with particularity the

circumstances constituting the fraud." FED. R. CIV. P. 9(b). "Put simply, Rule 9(b) requires the who, what, when, where, and how to be laid out." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 2010 WL 2106628, *2 (5th Cir. 2010) (quoting *Benchmark Electronics, Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir. 2003)). Substantively, to establish fraud under Texas law, Plaintiffs must show:

> (1) that a material representation was made;
> (2) the representation was false;
> (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion;
> (4) the speaker made the representation with the intent that the other party should act upon it;
> (5) the party acted in reliance on the representation; and
> (6) the party thereby suffered injury.

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009).

The only specific representation made by Defendant Masterfoods USA contained in the complaint is Ken Fridey's May 2007 email stating, "I spoke with [Masterfoods Mexico] yesterday and they advised me that they are still working on a proposal for you. For now it is business as usual until they finalize their proposal." [Dkt. No. 32 at 7]. Plaintiffs allege that this representation was false, that Masterfoods USA knew it was false, and that it was made with intention that Plaintiffs would rely upon it. [*Id.* at 16]. Plaintiffs also allege that they relied on the representation by continuing business as usual, by "spending significant time, and money" to market the products, "shar[ing] confidential information," and "introducing Fridey to [customers]." [*Id.*]. Finally, Plaintiffs allege that due to this fraud, they lost customers and profits to Masterfoods Mexico. [*Id.*]. While Plaintiffs' factual allegations are minimal, the Court finds that at this stage, with regards to the May 2007 email, Plaintiffs have sufficiently plead "the who, what, when, where, and how" required by Rule 9(b), providing Defendant with notice of

the nature and specifics of the fraud claim against it.  As such, Defendant's Motion to Dismiss

this claim under Rule 12(b)(6) is DENIED.

> Similar to a claim for fraud, a claim for negligent misrepresentation requires that:
>
> (1) a representation was made by a defendant in the course of business;
> (2) the defendant supplied false information for the guidance of others in their business;
> (3) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information; and
> (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation.

*Brown & Brown of Texas, Inc. v. Omni Metals, Inc.*, 2010 WL 1240580, *16 (Tex. App.-

Houston [1st Dist.] 2010).  Comparing these elements to the above elements for fraud, the

difference between the two torts lies primarily in the defendant's mind, whether they "knew the

statement was false or made it recklessly" versus a failure "to exercise reasonable care."  As

Plaintiffs have met the minimum requirements to state a claim for fraud (discussed above), by

alternatively alleging a failure to exercise reasonable care, Plaintiffs have also stated a claim for

negligent misrepresentation based on the same May 2007 statement by Defendant.  Thus,

Defendant's motion to dismiss Plaintiffs' claim for negligent misrepresentation is also DENIED.

### E.  Tortious Interference with Contract/Prospective Business Relations

Plaintiffs also claim "tortious interference with actual contract and business relationships

and prospective contract and business relationships."  [Dkt. No. 32 at 14].  To be clear, this

language translates into two separate torts under Texas law: "tortious interference with

(actual/existing) contract" and "tortious interference with prospective business relations

(prospective contract)."  *See Texas Integrated Conveyor Systems, Inc. v. Innovative Conveyor

Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.-Dallas 2009); *Plotkin v. Joekel*, 304 S.W.3d

455, 487 (Tex. App.-Houston [1st Dist.] 2009).  While grouped together in the Complaint, each

tort will be addressed separately by the Court.

Texas law protects existing contracts from interference by third parties. To establish a claim for tortious interference with existing contract, a Plaintiff must show:

> (1) the existence of a contract subject to interference,
> (2) willful and intentional interference,
> (3) that proximately causes damage, and
> (4) actual damage or loss.

*All Am. Tel., Inc. v. USLD Commc'ns., Inc.*, 291 S.W.3d 518, 531 (Tex. App.-Fort Worth 2009). "For a plaintiff to maintain a tortious interference claim, it must produce some evidence that the defendant knowingly induced one of the contracting parties to breach its obligations under a contract." *Id.* at 532.

Plaintiffs allege that "Masterfoods [USA] interfered with [SoM's] agreement with Sell-Thru by instructing Sell-Thru to not sell to [SoM]" and "Masterfoods [Mexico] interfered with Dibaresa's customer relationships and purchase orders by going to Dibaresa's customers and instructing them not to buy from Dibaresa." [Dkt. No. 32 at 14]. However, as discussed earlier, Masterfoods Mexico is not a defendant in this action, and thus any interference by it is not relevant to a claim against Defendant Masterfoods USA. Thus, the only interference at issue is Masterfoods USA's alleged interference with Sell-Thru. While Plaintiffs imply that there was some "agreement" with Sell-Thru, they do not allege or designate a specific *contract* with Sell-Thru that was the subject of interference. Similar to Plaintiffs' claim for breach of contract, it is clear that a business relationship existed between SoM and Sell-Thru, that of purchaser and middle-man. But Plaintiffs have not set forth sufficient facts to show the existence of a contract obligating Sell-Thru to fill SoM's orders. Without alleging an existing contract, only generally asserting an "agreement," Plaintiffs have failed to plead this claim with facts sufficient to move it from "possible" to "plausible," as required under Rule 8 and *Twombly*. Accordingly, Plaintiffs'

claim for tortious interference with existing contract by Defendant Masterfoods USA must be DISMISSED.

Texas law also protects contracts that are not yet formed, but have a reasonable probability of being formed, from wrongful interference. For tortious interference with a prospective business relationship, the elements are:

> (1) a reasonable probability that the plaintiff would have entered into a business relationship;
> (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring;
> (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and
> (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference.

*Smith v. Royal Seating, Ltd.*, 2009 WL 3682644, *3 (Tex. App.-Austin 2009) (*citing Wal-Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 726 (Tex. 2001)). The Texas Supreme Court clarified:

> [T]o recover for tortious interference with a prospective business relation a plaintiff must prove that the defendant's conduct was independently tortious or wrongful. By independently tortious we do not mean that the plaintiff must be able to prove an independent tort. Rather, we mean only that the plaintiff must prove that the defendant's conduct would be actionable under a recognized tort. . . . Conduct that is merely "sharp" or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations, and we disapprove of cases that suggest the contrary.

*Wal-Mart Stores*, 52 S.W.3d at 726.

To show interference with prospective business relations, Plaintiffs again allege that Masterfoods Mexico interfered with relationships between Dibaresa and its customers, but Masterfoods Mexico is not a defendant. With regard to Masterfoods USA, Plaintiffs allege that Masterfoods USA's action of instructing Sell-Thru to stop selling to SoM "eliminated any future business dealings between [SoM] and Dibaresa and Sell-Thru." [Dkt. No. 32 at 14]. Supporting this claim, Plaintiffs have sufficiently plead a probability of future contracts, that Defendant

consciously prevented those contracts, and the harm that resulted from Sell-Thru's refusal to sell. However, Plaintiffs have failed to allege the key element to this cause of action, an act that is tortious or unlawful. Plaintiffs have not alleged how Defendant's instruction to Sell-Thru to stop selling their goods to Plaintiffs rises above the level of "sharp or unfair" conduct, and amounts to an independently actionable tort, as required by the Texas Supreme Court in *Wal-Mart Stores*. Without pleading the existence of an independent tort on which this claim can stand, this claim must also be DISMISSED.

### F. Civil Conspiracy

Plaintiffs assert an agreement between Masterfoods USA and Sell-Thru rising to the level of civil conspiracy. [Dkt. No. 32 at 20]. A civil conspiracy is actionable when two or more persons agree to accomplish an unlawful purpose, or a lawful purpose by unlawful means, and damages proximately result. *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex. 1983). The elements of a claim for civil conspiracy are:

> (1) two or more persons;
> (2) an object to be accomplished;
> (3) a meeting of the minds on the object or course of action;
> (4) one or more unlawful, overt acts; and
> (5) damages as the proximate result.

*Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 450 (Tex. App.-Eastland 2006) (citing *Juhl v. Airington,* 936 S.W.2d 640, 644 (Tex. 1996)). Because "[i]t is not the agreement itself but an injury to the plaintiff . . . that gives rise to a cause of action for civil conspiracy," recovery is premised on an underlying tort. *Paschal*, 215 S.W.3d at 250. Fraud has been held to support a derivative claim for civil conspiracy. *Id.*

Plaintiffs allege that "[Masterfoods USA] and Sell-Thru entered into an agreement with eachother (sic) . . . to the furtherance of the common design to defraud Plaintiffs and interfere

with their customers in Mexico."  [Dkt. No. 32 at 20].   As support, Plaintiffs state that "[t]he

email in Plaintiffs (sic) possession demonstrate (sic) Sell-Thru would not sell at the direction of

Masterfoods [USA] and that Sell-Thru and Masterfoods [USA] communicated about the decision

not to sell."  [*Id.*].  Plaintiffs' problem in pleading this claim is similar to the problem with their

claim for tortious interference with prospective business relations: that they do not show how a

direction not to sell rises to the level of an independent tort.  Plaintiffs characterize this action as

a "common design to defraud," but have not plead sufficient facts to show that this action was

plausibly fraud.  To be clear, Plaintiffs have stated a claim for fraud, discussed above.  However,

that fraud involves a statement by Masterfoods USA as to the operations and intentions of

Masterfoods Mexico.  Plaintiffs have not stated a claim for fraud based on Masterfoods USA's

direction that Sell-Thru not sell to Plaintiffs.  Because this direction not to sell is the only "overt

act" provided by Plaintiffs in support of this claim, and Plaintiffs have not shown how this act

constitutes an independent tort, their claim for civil conspiracy is not "plausible" under the

pleading standards of Rule 8 and *Twombly*.  Accordingly, Plaintiffs' claim for civil conspiracy

between Defendant Masterfoods USA and Sell-Thru must be DISMISSED.

### G.  Statute of Limitations

Defendant also moves for dismissal of some of Plaintiffs' claims based on a two-year

statute of limitations.  [Dkt. No. 26 at 36].  At this point, the only claim remaining where the

statute of limitations may apply is Plaintiffs' claim for negligent misrepresentation.  "A statute of

limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's

pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the

like."  *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).  Defendant correctly asserts that a

two-year statute of limitations period applies to negligent misrepresentation claims.  *Etan Indus.*,

*Inc. v. Lehmann*, 308 S.W.3d 489, 489 (Tex. App.-Austin 2010) (citing *HECI Expl. Co. v. Neel,* 982 S.W.2d 881, 885 (Tex. 1998)).  The point of contention is the date on which Plaintiffs' claim accrued.  Plaintiffs filed this action on July 3, 2009.  [Dkt. No. 40 at 1].  Thus, for the claim to be barred by the statute of limitations, it must have accrued before July 3, 2007.

"Generally, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy," and the date of accrual is a question of law to be determined by the court.  *Etan Indus.,* 308 S.W.3d at 500 (citing *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 221 (Tex. 2003)).  Because it is unfair to run a limitations period before a plaintiff discovers wrongful conduct, the doctrine of fraudulent concealment defers the accrual period "until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the wrongful conduct."  *Id.*  When the plaintiff discovered, or should have discovered, the wrongful conduct is a question of fact.  *Id.*

As discussed above, Plaintiffs' claim for negligent misrepresentation hinges on a statement made by Defendant in May 2007.  Plaintiffs contend that they did not learn that the May 2007 statement was false until some time in December 2008.  [Dkt. No. 40 at 31-32].  The Complaint does include allegations of reliance well beyond the July 3, 2007 cutoff.  [Dkt. No. 32 at 7-9].  Viewing the Complaint in the light most favorable to Plaintiffs, it is not "evident" that Plaintiffs learned that the statement was false, and therefore Plaintiffs' claim accrued, before July 3, 2007.  Therefore, at this stage, Defendant's motion to dismiss this claim based on the statute of limitations is DENIED.

## III.     CONCLUSION

For the foregoing reasons, with respect to Plaintiffs' claims for breach of contract, breach of duty of good faith, tortious interference with contract, tortious interference with prospective business relations, civil conspiracy, as well as Plaintiffs' claims under Mexican law, Defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6) is hereby **GRANTED**, and those claims are hereby **DISMISSED**.

With respect to Plaintiffs' claims for fraud and negligent misrepresentation, Defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6) is hereby **DENIED**, and those claims remain.

IT IS SO ORDERED.

Done this 14th day of June, 2010, in Laredo, TX.


_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE


**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**